IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
FILE NO: 1:25 CV 58-MOC-WCM

CHRISTOPHER JONAS BROOKS

  Plaintiff,

v.

ASHEVILLE DETOX LLC et al.

  Defendant.

Exhibit C

**Separation Agreement and Release of Claims – $100 Consideration Not Paid "Release of claims and covenant not to sue is in exchange for the Company's agreement to provide the above payment."**

1

SEPARATION AGREEMENT AND RELEASE OF CLAIMS

THIS AGREEMENT is made and entered into by and between **Christopher Brooks** and **Asheville Detox LLC**.

THE PARTIES acknowledge the following:

"EMPLOYEE" refers to Christopher Brooks.

"COMPANY" refers to Asheville Detox LLC, its subsidiaries, business units, corporate affiliates, and parent companies, past and present, its predecessors and successors and its respective officers, managers, directors, employees, agents, insurers, legal counsel, successors and assigns, past and present.

EMPLOYEE and the Company agree that, unless Employee has already resigned or has otherwise been separated from the company, effective as of November 18, 2024, Employee shall be considered to have voluntarily resigned from his position with the Company, and this Agreement will become effective as set forth below.

EMPLOYEE has a Workers' Compensation claim currently before the North Carolina Industrial Commission, I.C. File No. 24774903. Notwithstanding the terms of this Agreement, the parties agree that the above-referenced Workers' Compensation claim shall be resolved in a separate "clincher" agreement and pursuant to the terms agreed upon between Employee and the Company on November 18, 2024.

THEREFORE, in consideration of the mutual agreements and promises set forth within this Agreement, the receipt and sufficiency of which are hereby acknowledged and, provided that Employee properly executes and returns it to counsel for the Company and does not revoke it as set forth below, Employee and the Company agree as follows:

1. Consideration

In consideration of Employee's agreements and promises set forth below, the Company will pay Employee One-Hundred and 00/Dollars ($100.00), the receipt and sufficiency of which are hereby acknowledged.

The parties agree that this consideration is over and above any other amount that Employee would otherwise be entitled to receive from the Company.

The parties agree that consideration under this agreement to Employee are not to be considered wages arising out of his employment with the Company. Employee agrees to hold the Company harmless in the event that the funds paid pursuant to this agreement are deemed taxable pursuant to any law of the United States, or the law of any state or local government. Employee agrees that he will indemnify and hold harmless the Company from any liability, costs, and/or penalties that may be incurred as a result of the Company's failure to deduct and remit to federal or state tax authorities' payroll and/or income tax deductions from the amounts provided pursuant to this agreement. to the extent any federal, state or local taxes are applicable

to the consideration amount, Employee agrees to pay such taxes.

2. Legal Obligations

The parties agree that the Company has no prior legal obligations to make the payment or promises described in paragraph 1 which are exchanged for the agreements and promises of Employee herein.

3. Release of Claims and Covenant Not to Sue

    A.    In exchange for the Company's agreement to provide the above payment, Employee agrees not to make any claims or demands or to commence any lawsuits against the Company from any and all known and unknown claims or causes of action that Employee may have against the Released Parties arising from or in connection with: (a) the terms and conditions of his/her employment with the Company; (b) the termination of or separation from his/her employment from the Company; and (c) any conduct, actions or omissions, known or unknown, by the Company occurring on or before the date Employee executes this Agreement.

        The released claims include Employee's attorneys' fees, court costs, wages, back pay, front pay, compensatory damages, punitive damages, general damages, special damages, penalties, benefits of any sort, liquidated damages, costs and disbursements, expert fees, injunctive relief, equitable relief, declaratory relief, interest, reinstatement, future employment, and any other legally recoverable category of damages or relief that Employee has ever had, or now has, or may claim to have, against the Company. It is expressly intended, understood and agreed that the claims released by Employee shall include, by way of example and without limitation, all claims arising under federal, state, or local statute, ordinance, common law, regulation, equity or other sources, whether known or unknown, and any and all rights arising under any state or federal constitution, statute, law, rule, regulation, or common law principle of tort, contract, or equity.

        In further consideration of the foregoing, receipt of which is hereby acknowledged, Employee, for himself and his current or future spouse or children, heirs, executors, administrators, grantees, and successors forever discharges Company, and its predecessors, insurers, indemnitors, purchasers, successors and assigns, from all manner of actions, causes of action, suits, debts, accounts, judgments, claims and demands whatsoever, in law and/or in equity arising out of or in any way related to Employee's hiring, employment, wages, commissions, bonuses, benefits, compensation, request for or to return from leave of absence, demotion, resignation, discharge, termination, severance or termination benefits, and/or terms and conditions of employment; any and all causes of action for harassment,

- 2 -

retaliation, breach of contract, breach of implied contract, tortious interference with contract, wrongful transfer or demotion, wrongful termination, fraud, negligence, libel or slander, intentional or negligent infliction of emotional distress, breach of confidentiality, invasion of privacy, or any other rights, claims, or causes of action arising under any state or federal constitution, statute, law, rule, regulation, or common law principle of tort, contract, or equity.

This specifically includes, but is not limited to, a release of any and all rights, claims, and causes of action of any sort arising under the Age Discrimination in Employment Act of 1967; Title VII of the Civil Rights Act of 1964, as amended; the Family and Medical Leave Act of 1993; the Americans with Disabilities Act; National Labor Relations Act; Civil Rights Act of 1866; Employee Retirement Income Security Act; "All North Carolina Laws", or any other legal theory or cause of action, regardless of type, character or form, he may have; any and all causes of action, whether in law and/or in equity, for any expense, reinstatement, loss, mental or physical injury, costs, attorneys' fees, mental anguish, pain and suffering, medical bills or costs, physical or mental impairment, damage to reputation, loss of enjoyment of life, loss of consortium, lost earnings or profits, lost wages or commissions, lost bonuses, lost seniority or retirement benefits, other lost employment benefits including, but not limited to, vacation, or holiday pay and long or short term disability, or any other damage (whether actual, compensatory, punitive, treble or otherwise) suffered or which may be suffered by Employee due to any event which occurred prior to the date of this Separation Agreement and Release. Additionally without waiving any prospective or retrospective rights under the Fair Labor Standards Act ("FLSA"), Employee agrees and acknowledges that he has received from the Company all rights and benefits, if any, due or potentially due to him pursuant to the FLSA.

B. Employee further expressly agrees that this Agreement may be treated as a complete defense to any action or proceeding that may be brought by Employee, or in Employee's behalf, against the Company for relief or damages of any kind arising from Employee's employment or termination from employment with the Company.

C. Employee acknowledges that this agreement and release is intended to bar claims under the Age Discrimination In Employment Act.

D. The intent of this Agreement is to fully and finally resolve all claims and possible claims against the Company that are waivable whether legal or equitable. Employee agrees and understands that any claims he may have under the aforementioned statutes or any other federal, state, or local law ordinance, rule or regulation, are effectively waived and released by this Agreement. Employee represents that he knows of no claim that he has that has not been released by

- 3 -

this Agreement. However, it is understood that Employee is not releasing or waiving any rights or claims which may arise after this Agreement is executed, any claims for the sole purpose of enforcing Employee's rights under this Agreement, or any claims which as a matter of law cannot be waived. Additionally, in accordance with 29 C.F.R. § 1625.23(b), nothing in this covenant not to sue is intended to preclude Employee from challenging the validity of this Agreement under the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f), with respect to claims under the Age Discrimination in Employment Act, and the Company shall not be entitled to recover any consideration paid under this Agreement, damages or its attorneys' fees and costs resulting from such challenge.

E. Nothing in this Agreement shall interfere with Employee's right to file a charge, cooperate or participate in an investigation or proceeding conducted by the Equal Employment Opportunity Commission, the National Labor Relations Board, or other federal or state regulatory or law enforcement agency. However, the consideration provided to Employee in this Agreement shall be the sole relief provided to Employee for the claims that are released by him herein. To the maximum extent permitted by law, Employee agrees that Employee will not seek and waives any right to accept any relief or award from any charge or action against the Company before any federal, state, or local administrative agency or federal, state or local court whether filed by Employee or on Employee's behalf with respect to any claim or right released in this Agreement or, in the alternative agrees to accept the $100.00 paid pursuant to this Agreement as full and final payment for any such benefits awarded.

4. Re-Employment Rights Waived

Employee agrees he will not seek reinstatement, reemployment, or a contract with Company in any capacity. In the event Employee applies for or otherwise seeks employment with Company, Employee agrees that Company may, in its sole, total and only judgment, refuse to hire or otherwise refuse to give Employee a job or employment. Employee agrees that if Employee knowingly or unknowingly applies for a position and is offered or accepts a position with the Company or its successors (either as a direct employee of the Company or through a temporary labor or staffing company), the offer may be withdrawn and Employee may be terminated without notice, cause or legal recourse. Employee further agrees that Employee will not institute any action based on alleged retaliation or other legal theory against the Company or its successors or any of its subdivisions for its failure to rehire Employee.

5. Tax Liability

The parties agree that Employee is responsible for any and all federal or state tax liability (including, but not limited to, taxes, fines, penalties, and interest) which could arise as a result of the aforementioned monetary payment.

6. Performance

Employee understands and agrees that the Company's obligation to perform under this Agreement is conditioned upon Employee's agreements and promises to the Company as set forth herein. In the event that a court of competent jurisdiction determines that Employee has breached any such agreements or promises, or caused any such agreements or promises to be breached, the Company's obligations to perform under this Agreement shall automatically terminate, and the Company shall have no further obligation to Employee. In addition, the Company may seek injunctive relief to enforce the provisions of this Agreement and may recover reasonable costs and attorneys' fees incurred as a result of such breach.

7. Successors and Assigns

This Agreement shall inure to and be binding upon the parties hereto, their respective heirs, legal representatives, successors, and assigns.

8. Governing Law

This Agreement shall be construed in accordance with the laws of the State of North Carolina and applicable federal law.

9. No Admission of Wrongdoing

Employee understands that the Company does not in any way admit any liability or wrongdoing regarding employee's employment and/or separation from the Company.

10. Confidentiality

Employee agrees not to disclose the terms and conditions of this Agreement to anyone except: (a) his attorneys; (b) his spouse; (c) his accountant/tax preparer; or (d) as required by law. This provision shall not prohibit or otherwise interfere with Employee's right to file a charge, cooperate or participate in an investigation or proceeding conducted by the Equal Employment Opportunity Commission, the National Labor Relations Board, or other federal or state regulatory or law enforcement agency. Employee acknowledges and agrees that this Agreement is not a subterfuge to avoid disclosure of sexual harassment or gender discrimination allegations.

11. Entire Agreement; Modification

This Agreement constitutes the entire understanding of the parties, and no representation, promise, or inducement not included herein shall be binding upon the parties. Employee affirms that the only consideration for the signing of this Agreement is the terms set forth above and that no other promises or assurances of any kind have been made to Employee by the Company or any other entity or person as an inducement for Employee to sign this Agreement. This Agreement may not be changed orally, but only by an agreement in writing signed by the parties or their respective heirs, legal representatives, successors, and assigns.

12. <u>Partial Invalidity</u>

The parties agree that the provisions of this Agreement shall be deemed severable and that the invalidity or unenforceability of any portion or any provision shall not affect the validity or enforceability of the other portions or provisions. Such provisions shall be appropriately limited and given effect to the extent that they may be enforceable.

13. <u>Acknowledgement</u>

**BY SIGNING BELOW AND RETURNING THIS AGREEMENT, YOU AFFIRM THAT YOU HAVE BEEN GIVEN A REASONABLE PERIOD OF TIME TO CONSIDER THIS AGREEMENT; THAT YOU HAVE CAREFULLY READ AND UNDERSTAND EACH OF THE TERMS OF THIS AGREEMENT; THAT THE CONSIDERATION YOU WILL RECEIVE IN EXCHANGE FOR EXECUTING THIS AGREEMENT IS GREATER THAN THAT TO WHICH YOU WOULD BE ENTITLED IN THE ABSENCE OF THIS AGREEMENT; THAT YOU ARE FULLY COMPETENT TO UNDERSTAND AND EXECUTE THIS AGREEMENT; AND THAT YOU ACCEPT IT KNOWINGLY AS YOUR OWN FREE AND VOLUNTARY ACT WITHOUT ANY COERCION OR INTIMIDATION; AND THAT YOU HAVE THE RIGHT TO CONSULT WITH AN ATTORNEY ABOUT THIS AGREEMENT AND CERTIFIES THAT THE COMPANY HAS URGED AND DOES URGE HIM TO DO SO.**

As to Employee:

_[signature]_
Christopher Jonas brooks (Nov 25, 2024 11:40 EST)

_____    _____
Date                    Christopher Brooks

For the Company:

_____    _____
Date                    Asheville Detox LLC