IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

FILE NO: 1:25 CV 58-MOC-WCM

FILED
ASHEVILLE, NC
JUN 2 5 2025
U.S. DISTRICT COURT
W. DISTRICT OF N.C.

| | |
|---|---|
| CHRISTOPHER JONAS BROOKS<br>PLAINTIFF, | }<br>}<br>} PLAINTIFF'S RESPONSE IN OPPOSITION |
| v. | } TO DEFENDANTS' MOTION TO<br>} ENFORCE SETTLEMENT |
| ASHEVILLE DETOX LLC et al.<br>DEFENDENTS | }<br>} |

**NOW COMES** Plaintiff Christopher Jonas Brooks, appearing pro se, submits this Response in Opposition to Defendants' Motion to Enforce Settlement. For the reasons set forth below, the Motion should be denied.

**INTRODUCTION**

Defendants seek to enforce a settlement agreement that does not exist. Plaintiff never signed, delivered, or accepted a finalized agreement. The draft document on which Defendants rely remained unexecuted and subject to ongoing negotiations, and there was no mutual assent to its terms. Defendants' motion mischaracterizes these negotiations, relies on an altered court-filed document, and makes the factually impossible claim that Plaintiff signed an agreement on a future date (November 25, 2025). Furthermore, Defendants have violated Rule 408 of the Federal Rules of Evidence by improperly using confidential settlement communications. Their bad faith, further evidenced by an email threatening Rule 11 sanctions while acknowledging

Plaintiff's safe harbor notice **(Exhibit D)**, mirrors the misconduct asserted in Plaintiff's Rule 11 sanctions motion and warrants the denial of their motion.

## FACTUAL BACKGROUND

1. **Counsel's Withdrawal (Mid-February 2025):**

   Plaintiff's former counsel withdrew after Plaintiff rejected Defendants' proposed settlement terms, specifically an overbroad release that would have barred unrelated claims. Plaintiff did not terminate counsel; counsel withdrew voluntarily due to Plaintiff's refusal to accept the proposed terms **(Exhibits F1, F2, F3)**.

2. **Preliminary Negotiations (February 2025):**

   Plaintiff and Defendants' counsel engaged in settlement discussions. Plaintiff consistently objected to release terms that would waive future claims, including those under North Carolina's Retaliatory Employment Discrimination Act (REDA) **(Exhibits G1, G2, G3, G4)**. Defendants used vague language and pressured Plaintiff to delay filing his claim before the 90-day statutory deadline, warning that filing would void any offers. This created a "catch-22," forcing Plaintiff to file his claim to preserve his rights while negotiations continued.

3. **Court Filing of Unsigned Draft (May 12, 2025):**

   Plaintiff filed an unsigned draft document, Document 13-6, on the court docket as part of a larger submission. This document bore no signature, date, or court stamp indicating execution and was never intended to be a finalized agreement **(Exhibit A)**.

4. **Defendants' Alteration of Court Document:**

Defendants took a copy of Exhibit 13-6, added a signature and a date (May 15, 2025) that were not provided by Plaintiff, and presented this altered document as an executed agreement (Prior filing Exhibit AA/5 ). As Document 13-6 was a court-filed document, Defendants could not have obtained it independently. Plaintiff retained the only signed version, which was never delivered and was retracted upon review of its overbroad terms **(Exhibit B)**.

5. **Defendants' Contradictory and Impossible Date Claims:**

    In their Motion to Enforce Settlement, Defendants claim Plaintiff signed a settlement agreement on November 25, 2025. This date is in the future and is therefore impossible, demonstrating the absence of a valid, executed agreement. This error, combined with their alteration of court filed document 13-6, reflects a pattern of inaccurate and misleading assertions **(Exhibit C)**.

6. **Defendants' Admission of No Executed Agreement:**

    In their response to Plaintiff's May 12 filing, Defendants admitted they lacked a fully executed release or a record of payment for the $100 referenced in the draft. They stated that, "in an abundance of caution," they unilaterally executed their version of the agreement (prior filing Exhibit AA/5) on May 15, 2025, and mailed it to Plaintiff. This confirms that no mutual agreement existed when they asserted their Fourth Affirmative Defense **(Exhibit B)**.

7. **Defendants' Bad Faith Response to Rule 11 Safe Harbor Notice:**

    On May 27, 2025, Defendants' counsel sent an email acknowledging Plaintiff's Rule 11 safe harbor notice (served May 20, 2025) and a settlement offer, which they rejected. In this email, they claimed Plaintiff had settled the claims "on three different occasions,"

including a workers' compensation agreement, and threatened to seek Rule 11 sanctions against Plaintiff. They also alleged a breach of the workers' compensation settlement and offered $5,000 to settle by May 30, 2025, or they would pursue enforcement and/or sanctions. This email, which was their only acknowledgment of Plaintiff's safe harbor notice, failed to address the substance of the notice or withdraw the baseless Fourth Affirmative Defense. Instead, it escalated the situation with unsupported claims and intimidation tactics **(Exhibit D)**.

8. **Misconduct During Rule 11 Safe Harbor Period:**

During the 21-day safe harbor period under Federal Rule of Civil Procedure 11(c)(2) (May 20–June 10, 2025), Defendants filed Plaintiff's confidential Rule 11 safe harbor letter **(Exhibit J)** and the accompanying settlement offer. They did so not to prove the existence of a settlement, but to portray Plaintiff as unreasonable and obstructive. This conduct violates Federal Rule of Evidence 408(a) and demonstrates a pattern of bad faith.

9. **Context of Negotiations and Plaintiff's Caution:**

   - Defendants' emails used ambiguous language and highlighted unresolved terms in yellow, acknowledging that Plaintiff's proposed edits were only partially accepted **(Exhibits E1, E2)**. No final, clean version of the agreement was ever signed by both parties **(Exhibit F3)**.

   - Plaintiff's prior workers' compensation settlement in 2024 excluded a "release of all claims" clause after his objection, demonstrating his consistent refusal to waive unrelated rights **(Exhibits H1, H2, H3)**.

   - Plaintiff's financial hardship following his termination in October 2024, which Defendants used Hurricane Helene as a pretext to justify, and their false claim to

the Employment Security Commission that he had voluntarily quit (which delayed his unemployment benefits until it was reversed in January 2025), explain his caution with settlement terms **(Exhibits I1, I2, I3, I4, I5, I6)**. He is particularly wary of payments being mischaracterized as "back pay," which could be treated as wages and trigger a recoupment or reduction of his unemployment benefits, further threatening his financial stability.

10. **Use of Defendants' Own Memorandum as Evidence of Contradiction and Rule 408 Misuse:**

    Plaintiff includes page 3 of Defendants' Memorandum-Brief in Opposition to Motion to strike **(Exhibit K)** not to re-argue Rule 11 sanctions here, but to show admissions and conduct directly relevant to the enforceability of the alleged settlement. In that filing, Defendants acknowledge that no signed release or payment record existed at the relevant time, undermining their assertion that a binding settlement had been formed. Additionally, Defendants improperly filed Plaintiff's confidential Rule 11 safe harbor letter and related settlement offer, using them to imply bad faith or unreasonable conduct. This use is prohibited under Rule 408 of the Federal Rules of Evidence and further illustrates Defendants' bad faith in these proceedings. The memorandum is thus material not for its legal conclusions, but for the evidentiary admissions it contains.

**ARGUMENT**

An enforceable settlement agreement requires mutual assent, definite terms, and consideration. *Kolczynski v. United States, 2020 WL 634299, at \*4 (D. Md. Feb. 10, 2020);*

*Winston v. Mediafare Ent. Corp., 777 F.2d 78, 80 (2d Cir. 1985).* No such agreement exists here.

### 1. There Was No Mutual Assent or Definite Terms

Plaintiff never signed or delivered a finalized agreement. Document 13-6 was an unsigned draft filed on May 12, 2025 **(Exhibit A)**. Defendants' unilateral execution of their altered version of the agreement (prior filing Exhibit AA/5) on May 15, 2025, after admitting that no signed release existed, cannot retroactively create a contract **(Exhibit B)**. Their claim that Plaintiff signed an agreement on a future date (November 25, 2025) further negates any assertion of mutual assent **(Exhibit C)**. Their vague email claim of "three different" settlements, which lacks specifics or evidence, confirms that there were only ongoing negotiations with unresolved terms, as shown in their highlighted emails **(Exhibit D)**. Plaintiff's silence or continued discussions do not constitute assent, especially when there are no finalized terms. *Winston, 777 F.2d at 80.*

### 2. There Was No Consideration

Defendants provided no payment or performance to support a settlement. Their admission of no payment record and their unilateral act of mailing a check (which was not accepted by Plaintiff) negates the element of consideration, rendering any alleged agreement unenforceable **(Exhibit B)**.

### 3. Defendants Improperly Used an Altered Court Document

Defendants altered Plaintiff's court-filed Exhibit 13-6 by adding a signature and date to create prior filing Exhibit AA/5 and then misrepresented it as a fully executed agreement. Altering judicially filed materials for improper purposes is impermissible. *United States v. Sine, 493 F.3d 1021, 1036–37 (9th Cir. 2007); United States v. Nelson, 365 F. Supp. 2d 381, 388 (S.D.N.Y. 2005)*. This misconduct, which is also the basis of Plaintiff's Rule 11 motion, undermines their current motion **(Exhibits A, B)**.

### 4. Defendants Violated Rule 408 of the Federal Rules of Evidence

Defendants' filing of Plaintiff's global settlement offer and Rule 11 letter **(Exhibit J)** during the safe harbor period violates Rule 408, which prohibits using compromise offers to prove liability or the validity of a claim. *Fibonacci v. Harris, 616 F.3d 382, 391–92 (4th Cir. 2010)*. Defendants' motion relies heavily on settlement communications to argue that a binding agreement was formed and to suggest that Plaintiff acted in bad faith. This is precisely what Rule 408 prohibits. Rule 408 bars the use of compromise offers and conduct **"to prove or disprove the validity or amount of a disputed claim"** or **"to impeach by a prior inconsistent statement or contradiction."** *Fed. R. Evid. 408(a)*. Defendants have cited Plaintiff's prior global offer, their own counteroffers, and post-offer communications not to show delay or for some other permissible purpose, but as direct evidence that Plaintiff "already settled" the claim. This use is impermissible. Their simultaneous use of these same communications to threaten Rule 11 sanctions further illustrates their misuse of protected negotiation material for the purpose of a character attack, which is also barred under Rule 408. Such tactics cannot form the basis of an enforceable settlement.

### 5. Defendants' Contradictory Timeline Undermines Their Claim

Defendants' own filings contain irreconcilable statements about the timing of the alleged settlement. In their memorandum **(Exhibit K)**, they state that they executed the release and mailed it with payment on May 15, 2025. However, their Fourth Affirmative Defense asserts that a binding agreement was formed in November 2024. It is impossible for both assertions to be true. A party cannot claim that an agreement was binding in November while also stating that it was not executed until the following May "out of an abundance of caution."

This inconsistency alone negates the existence of a valid, finalized contract. As the Fourth Circuit and other courts have held, an enforceable settlement requires mutual assent and definite terms. ***Kolczynski, 2020 WL 634299, at \*4.*** Furthermore, "if the agreement is subject to further approval or formal execution, it is not enforceable." ***Winston, 777 F.2d at 80.*** Defendants' conflicting narratives demonstrate neither mutual assent nor certainty of terms—only confusion and contradiction—which defeats their own claim.

### 6. Even If a Settlement Existed, Defendants Failed to Perform Within a Reasonable Time

Even assuming, arguendo, that a settlement was formed, Defendants failed to perform (e.g., provide payment or a mutually executed agreement) within a reasonable time, as required under North Carolina common law when no performance deadline is specified. *See **Hardin v. KCS Int'l, Inc., 199 N.C. App. 687, 682 S.E.2d 726 (2009).*** Given Plaintiff's financial hardship and the lack of any formal execution or follow-through by Defendants after November 2024, a reasonable time for performance under North Carolina law would not exceed 60 days **(Exhibits B, D)**. Defendants' unilateral execution of prior filing Exhibit AA/5 on May 15, 2025, and their

erroneous claim of a signing on November 25, 2025, confirm that there was no timely performance, which would render any alleged agreement unenforceable **(Exhibits B, C).**

**CONCLUSION**

No enforceable settlement exists due to the absence of mutual assent, definite terms, and consideration. Defendants' alteration of a court-filed document, misuse of confidential settlement communications, factually impossible claims, and contradictory timeline all demonstrate their bad faith and are consistent with the conduct described in Plaintiff's Rule 11 motion. For these reasons, Plaintiff respectfully requests that the Court:

1. **Deny Defendants' Motion to Enforce Settlement.**

2. **Strike Defendants' filing of Plaintiff's global settlement offer as a violation of Rule 408.**

Respectfully submitted,

/s/ Christopher Jonas Brooks
Christopher Jonas Brooks
41 Vance Ave, Unit B
Black Mountain, NC 28711
chris.brooks111@outlook.com
Dated: June 25, 2025

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed/ delivered to the following individuals at the addresses listed:


Robert C. Carpenter
N.C. State Bar No. 36672
Alicia E. Hill
N.C. State Bar No. 58372
Allen Stahl & Kilbourne, PLLC
20 Town Mountain Road, Suite 100
Asheville, NC 28801
828-254-4778
828-254-6646 fax
bcarpenter@asklawnc.com
ahill@asklawnc.com
Attorney for Defendants


**This the 25th Day of June 2025**

/s/ Christopher J. Brooks
Christopher J. Brooks
41 Vance Ave Unit B
Black Mountain, NC 28711
(910)294-1826
Chris.brooks111@outlook.com
*Pro se* Plaintiff