IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

FILE NO: 1:25 CV 58-MOC-WCM

FILED
ASHEVILLE, NC
JUL 03 2025
U.S. DISTRICT COURT
W. DISTRICT OF N.C.

| | |
|---|---|
| CHRISTOPHER JONAS BROOKS<br>PLAINTIFF,<br><br>v.<br><br>ASHEVILLE DETOX LLC et al.<br>DEFENDENTS | PLAINTIFF'S REPLY BRIEF IN<br>SUPPORT OF MOTION FOR RULE<br>11 SANCTIONS |

**NOW COMES,** Plaintiff Christopher Jonas Brooks, appearing pro se, respectfully submits this Reply in further support of his Motion for Rule 11 sanctions. Defendants' Response not only fails to refute but in fact confirms the sanctionable misconduct at issue. They boldly assert that it was proper to sign and mail a purported settlement agreement—even though they concede that no such agreement was ever signed or funded at the time they invoked it as a defense. Worse still, Defendants subsequently tampered with the record by altering a court-filed exhibit to manufacture evidence of an agreement that never existed. Under the Supreme Court's binding precedent in ***Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990)***, the filing of papers without an objectively reasonable factual or legal inquiry—and particularly those involving manipulation of court documents—"shall" be met with appropriate sanctions.

1

# I. DEFENDANTS' RESPONSE CONFIRMS THEIR FOURTH AFFIRMATIVE DEFENSE VIOLATED RULE 11(b)(3)

Defendants' own admissions demonstrate that their Fourth Affirmative Defense lacked the evidentiary support required by *Federal Rule of Civil Procedure 11(b)(3)*, which mandates that "factual contentions have evidentiary support or, if specifically, so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." The Supreme Court in *Business Guides, Inc. v. Chromatic Communications Enterprises, 498 U.S. 533, 548-49 (1991)*, established that Rule 11 applies an objective standard requiring **"reasonable inquiry into both the facts and the law"** and that **"good faith alone is not sufficient if the filing is objectively unreasonable."**

Defendants acknowledge that they **"took"** Plaintiff's court-filed settlement agreement, **"signed it,"** and **mailed it with payment**—actions that occurred months after asserting their defense. Their claim that "Plaintiff has twice (if not thrice) fully settled the claims he brought in this case" **reveals the confusion underlying their defense**. This uncertainty about how many settlements allegedly exist demonstrates the absence of factual foundation for their March 2025 assertion of a specific November 2024 agreement.

The Fourth Circuit in *Brubaker v. City of Richmond, 943 F.2d 1363, 1373 (4th Cir. 1991)*, holds that such conduct is sanctionable when it lacks objective reasonableness. Defendants' subsequent admission of **"misplacing"** the alleged document, combined with their need to create a new version using Plaintiff's court-filed exhibit, confirms that their Fourth Affirmative Defense was objectively unreasonable when filed.

2

## II. THE DEVASTATING ADMISSION IN DOCUMENT 31

In Defendants' Court filing **Document 31, page 2,** *Argument Section II*, Defendants make an extraordinary admission that completely undermines their position:

> **"The alleged lack of Asheville Detox's signature on the 2024 Settlement Agreement does not affect its enforceability particularly when Brooks signed it."**

1. **Admits No Valid Agreement Existed:** Defendants acknowledge that Asheville Detox never signed the alleged 2024 settlement agreement.
2. **Contradicts Their Fourth Affirmative Defense:** In March 2025, they asserted a defense based on a settlement agreement they now admit was unsigned by one party.
3. **Demonstrates Knowledge of Deficiency:** They knew the agreement lacked an essential element but asserted it as a defense anyway.
4. **Claims Legal Impossibility:** They argue an unsigned agreement is enforceable, which contradicts basic contract law principles.

## III. THE TIMELINE OF CONTRADICTIONS

The timeline of the Defendants' contradictory statements demonstrates the objectively unreasonable nature of their conduct:

- March 2025: Assert Fourth Affirmative Defense claiming valid November 2024 settlement
- May 2025: Admit to "misplacing" the November 2024 document in their motion to enforce

3

- July 2025: Admit in Document 31 that Asheville Detox never signed the 2024 agreement
- Throughout: Continue to claim enforceability despite these admissions

This pattern shows Defendants knew or should have known their Fourth Affirmative Defense lacked factual support when filed.

## IV. DEFENDANTS' ALTERATION OF COURT-FILED DOCUMENTS VIOLATES FUNDAMENTAL EVIDENTIARY PRINCIPLES

Defendants did more than simply reference a filed exhibit—they took Plaintiff's court-filed **Exhibit 13-6**, added new signatures and a date, and then presented it as an executed settlement agreement. The Supreme Court in ***Chambers v. NASCO, Inc., 501 U.S. 32, 44–46 (1991)***, endorsed sanctions where parties manipulate the record because such conduct "strikes at the heart of the judicial process."

Under ***Rule 901***, every proffered document must be authenticated to show it is what its proponent claims. By altering a court record without any custodian's testimony or chain-of-custody foundation, Defendants rendered **Exhibit 13-6** inherently unauthentic. ***Rule 902(b)(1)*** further provides that copies of public records are self-authenticating only if free from alteration. Their conduct stripped any presumption of trustworthiness from the exhibit.

Courts have routinely sanctioned parties for tampering with judicial records. Similarly, the Fourth Circuit recognizes that document falsification justifies sanctions under the court's inherent powers. Permitting this altered exhibit would undermine confidence in the integrity of the record and reward deception. Accordingly, the Court should strike any reference to—or use of—any

and all versions of the modified **Exhibit 13-6** and impose sanctions for this blatant misuse of evidentiary rules.

## V. DEFENDANTS' RULE 408 VIOLATION DEMONSTRATES DISREGARD FOR FUNDAMENTAL PROTECTIONS

Defendants' claim that "there is nothing improper about attaching his Rule 11 letter in response to his motion to strike the affirmative defense of release" ignores ***Federal Rule of Evidence 408(a)'s*** clear prohibition on using settlement communications to prove the validity or amount of a disputed claim. In ***E.I. DuPont de Nemours & Co. v. Kolon Industries, 803 F. Supp. 2d 469, 488 (E.D. Va. 2011)***, courts have enforced ***FRE 408*** to protect negotiation integrity.

Defendants' filing of Plaintiff's confidential Rule 11 safe harbor letter and accompanying settlement proposal was not to prove the existence of a settlement, but to portray Plaintiff as unreasonable—precisely the type of conduct Rule 408 prohibits. Their violation of this fundamental evidentiary rule demonstrates the pattern of disregard for procedural safeguards that characterizes their conduct throughout this litigation.

# VI. THE WORKERS' COMPENSATION AGREEMENT CANNOT SUPPORT DEFENDANTS' CLAIMS

Defendants' reliance on the Workers' Compensation Agreement ignores the document's explicit limitations. North Carolina law enforces clear contract terms as written. ***State ex rel. Comm'r of Ins. v. Rate Bureau, 300 N.C. 381, 387 (1980)***. The agreement unequivocally states on **page 11**: **"no term of this agreement shall be interpreted to bar any future workers compensation plans that the plaintiff may have...that arise after November 18th."** More definitively, **page 12 provides**: **"all parties agree that no rights other than those arising under the provisions of the workers compensation act...are released by the execution of this agreement."**

These provisions demonstrate that the Workers' Compensation Agreement was precisely limited to workers' compensation claims and cannot, by its own terms, serve as a bar to Plaintiff's civil employment claims. Defendants' attempt to stretch this limited agreement into a global release constitutes a material misrepresentation of the document's scope and effect.

# VII. DEFENDANTS' PATTERN OF MISREPRESENTATION WARRANTS ENHANCED SANCTIONS

Defendants' current conduct is part of a broader pattern of misrepresentation across multiple proceedings that warrants enhanced sanctions. The federal court in ***In Re Pradaxa (Dabigatran Extexilate) Products Liability Litigation, MDL (S.D. Ill. 2014),*** recognized that

6

courts should consider the cumulative effect of repeated misconduct, stating that "there is a cumulative effect that the Court not only can but should take into account" when imposing sanctions for "egregious" misconduct and "contumacious disregard for 'the Court's' authority."

**Workers' Compensation Proceedings:** <u>Defendants initially denied the occurrence of Plaintiff's workplace incident, only to later concede it happened while disputing the circumstances. This involved changing their factual assertions and the alleged deletion of video evidence that could have clarified the events.</u>

**Unemployment Proceedings:** <u>Defendants falsely claimed Plaintiff quit for personal reasons in May 2024, leading to a three-month delay in Plaintiff receiving benefits during Hurricane Helene and in a federally declared disaster area. Defendants failed to appear at the subsequent hearing, implicitly acknowledging the falsity of their initial statements.</u>

**Current Federal Proceedings:** <u>Defendants asserted a November 2024 settlement agreement they did not possess, later claimed it was "misplaced," and attempted to create one retroactively using Plaintiff's court-filed document.</u>

This pattern demonstrates a consistent willingness to make unsubstantiated factual assertions in official proceedings to gain tactical advantage, supporting the imposition of **enhanced sanctions under the cumulative effect doctrine established in In Re Pradaxa.** Such repeated bad faith conduct supports enhanced sanctions under *Roadway Express, Inc. v. Piper, 447 U.S. 752, 767 (1980),* **and the court's inherent authority.**

## VIII. DEFENDANTS' SETTLEMENT MISREPRESENTATION CONSTITUTES SANCTIONABLE CONDUCT

The ***Southern District of New York in Otto v. Hearst Communications, 2019 WL 1034116, at *5 (S.D.N.Y. Feb. 21, 2019)***, addressed sanctions for material misrepresentations during settlement processes, noting that sanctions are appropriate when there is clear evidence that counsel "**knowingly made a materially false statement**" and the opposing party "**had been prejudiced by the false statement.**"

Defendants' misrepresentation of having a signed settlement agreement they didn't possess, combined with their coercive tactics of sending cash and a check to a pro se litigant, constitutes the type of material misrepresentation that warrants sanctions. Their dismissive characterization of Plaintiff's arguments as "**meritless**" without substantive analysis, and their assertion that "**Defendants should not even be here,**" reflects the very attitude that Rule 11 was designed to address.

## IX. DEFENDANTS' REQUEST FOR ATTORNEY'S FEES VIOLATES RULE 11'S PURPOSE

Defendants' request that this Court "award Defendants its attorneys' fees incurred in response to Plaintiff's Motion" represents an attempt to punish Plaintiff for bringing a legitimate sanctions motion. The Supreme Court in ***Cooter & Gell*** emphasized that Rule 11's purpose is deterrence, not reimbursement. **Defendants' characterization of reasonable attorneys' fees as**

8

**"relatively meager here (less than $2,000)" while seeking to impose them on a pro se litigant demonstrates a lack of proportionality and good faith.**

This request is particularly inappropriate given that Defendants' **response confirms rather than refutes the Rule 11 violations alleged**. The Second Circuit in *Hadges v. Yonkers Racing Corp., 48 F.3d 1320 (2d Cir. 1995)*, established that misrepresentations to the court are sanctionable conduct. Seeking attorney fees for defending objectively sanctionable conduct violates the spirit of Rule 11 and constitutes an improper attempt to chill legitimate sanctions motions.

## X. DEFENDANTS FAIL TO ADDRESS CRITICAL FACTUAL CONTRADICTIONS

**Defendants' response is notable for what it does not address:**

1. 1.The Impossible Future Date: Defendants never explain their claim in their motion to enforce settlement that Plaintiff signed an agreement on November 25, 2025—a date in the future.
2. 2.The "Misplaced" Document: Defendants provide no explanation for how they "misplaced" the alleged November 2024 agreement or why they needed to create a new version using Plaintiff's court-filed exhibit.
3. 3.Timeline Contradictions: Defendants never reconcile their March 2025 assertion of a November 2024 settlement with their May 2025 admission that no signed agreement existed.

9

These omissions are telling and support the inference that Defendants cannot provide satisfactory explanations because their conduct was objectively unreasonable under the standard established in Business Guides.

## XI. THE COURT SHOULD IMPOSE SANCTIONS TO DETER FUTURE ABUSE

As this Court noted in *Charlotte-Mecklenburg Sch. Bd. of Educ., No. 3:19-cv-244-MOC-DCK, 2020 U.S. Dist. LEXIS 145389, at \*4-5 (W.D.N.C. Aug. 12, 2020)*, "Rule 11 motions should not be prepared or threatened for insignificant violations of the rule [and a] claim of violation of Rule 11 is a serious charge and can itself form the basis of a Rule 11 sanction." Here, Defendants' violations are far from insignificant. Their **misrepresentation of a non-existent settlement agreement**, **alteration of court-filed documents**, **violation of Rule 408**, and **pattern of misconduct across multiple proceedings constitute serious violations that warrant sanctions**. The Supreme Court in *Roadway Express, Inc. v. Piper, 447 U.S. 752, 767 (1980)*, endorses sanctions for repeated bad faith under *28 U.S.C. § 1927* and the **court's inherent powers.**

## CONCLUSION

Defendants' admissions in Document 31 confirm that their Fourth Affirmative Defense was objectively unreasonable when filed. Their acknowledgment that "the alleged lack of Asheville Detox's signature on the 2024 Settlement Agreement does not affect its enforceability"

demonstrates **they knew** the agreement lacked an essential element but asserted it as a defense anyway.

The Supreme Court's holdings in *Cooter & Gell* and *Business Guides* establish that such conduct violates Rule 11's objective reasonableness standard and mandates sanctions. The pattern of misconduct demonstrated across multiple proceedings, as recognized in *In Re Pradaxa*, supports enhanced sanctions to deter future abuse.

### For these reasons, Plaintiff respectfully requests that this Court:

**1.GRANT** Plaintiff's Motion for Rule 11 Sanctions.

**2.IMPOSE** monetary sanctions of $1,000 against Defendants.

**3.AWARD** Plaintiff $200 in expenses incurred in bringing this motion.

**4.STRIKE** Defendants' filings that violate Federal Rule of Evidence 408.

**5.ORDER** withdrawal of Defendants' Fourth Affirmative Defense.

**6.DENY** Defendants' request for attorney's fees; and

**7.GRANT** such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ **CHRISTOPHER JONAS BROOOKS**
**Christopher Jonas Brooks**
Pro Se Plaintiff
July 3, 2026
(910) 294-1826
Chris.brooks111@outlook.com

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed/ delivered to the following individuals at the addresses listed:


Robert C. Carpenter
N.C. State Bar No. 36672
Alicia E. Hill
N.C. State Bar No. 58372
Allen Stahl & Kilbourne, PLLC
20 Town Mountain Road, Suite 100
Asheville, NC 28801
828-254-4778
828-254-6646 fax
bcarpenter@asklawnc.com
ahill@asklawnc.com
Attorney for Defendants


This the 3rd Day of July 2025

/s/ Christopher J. Brooks
Christopher J. Brooks
41 Vance Ave Unit B
Black Mountain, NC 28711
(910)294-1826
Chris.brooks111@outlook.com
*Pro se* Plaintiff