UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:25-cv-58-MOC-WCM

| | |
|---|---|
| CHRISTOPHER JONAS BROOKS, ) <br> ) <br> Plaintiff, pro se, ) <br> ) <br> v. ) <br> ) <br> ASHEVILLE DETOX, LLC and ) <br> HEALTH CARE ALLIENCE NORTH ) <br> AMERICA, ) <br> Defendants. ) | ORDER |

**THIS MATTER** is before the court on a Motion to Enforcement Settlement Agreement, filed by Defendants Asheville Detox, LLC and Health Care Allience North America. (Doc. No. 21). Also pending is Plaintiff's pro se Motion for Rule 11 Sanctions. (Doc. No. 25). Having considered the motion and reviewed the pleadings, the Court enters the following Order.

I. BACKGROUND

This is an employment discrimination action in which pro se Plaintiff Christopher Jonas Brooks has sued Defendants Asheville Detox, LLC and Health Care Allience North America, alleging that he was discriminated against because of his gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Plaintiff was employed by Defendant Asheville Detox, LLC ("Asheville Detox") from January 9, 2024, to May 30, 2024. (Doc. No. 1). He was injured on the job on May 30, 2024, and filed a claim for benefits under the North Carolina Workers' Compensation Act. (Doc. Nos. 1, 13-9).

Plaintiff settled his workers' compensation claim for $50,000. (Doc. Nos. 13-5, 13-6 & 13-7). He electronically signed the "clincher" on November 25, 2024, at "11:40 EST." (Doc. No. 13-5). As a condition of that settlement, Plaintiff executed a release of all legal claims against

1

Defendants through a written settlement agreement entered on the same day and time as the clincher. (Doc. No. 13-6). The terms of the settlement agreement stated, among other things, that Plaintiff's release of all claims "specifically includes, but is not limited to, a release of any and all rights, claims, and causes of action of any sort arising under . . . Title VII of the Civil Rights Act of 1964, as amended . . . ." (Id. at 4). Plaintiff received the $50,000 workers' compensation settlement proceeds, minus his legal fees. (Doc. No. 13-7).

On June 11, 2024, Plaintiff filed an EEOC Charge of Discrimination against Defendants, alleging discrimination for failure to promote because he was male. The EEOC issued a right to sue letter on November 29, 2024. (Doc. No. 1). His separate legal counsel contacted defense counsel on December 10, 2024, and made a settlement demand in exchange for a release of claims against Defendants. On February 5, 2025, and after several rounds of negotiation, Plaintiff, through his attorney, accepted Defendants' settlement offer of $7,000. (Doc. No. 22-1). Plaintiff's legal counsel asked that the $7,000 be split approximately equally between him and Plaintiff. (Id.).

On February 13, 2025, legal counsel for Defendants sent a draft settlement agreement to Plaintiff's legal counsel that contained the material terms of the settlement, i.e., payment of the funds in exchange for a complete release. (Doc. No. 22-2). The draft settlement agreement reflected the requested attorney/client division of fees: $3,705.00 to Plaintiff and $3,295.00 to "Martoccio Law Group." (Id.).

Plaintiff thereafter fired his attorney. On February 24, 2025, after speaking with the defense counsel, Plaintiff emailed his own proposed settlement agreement reflecting the same $7,000 settlement payment in exchange for a release of claims. (Doc. No. 22-3). The only material difference between Defendants' proposed settlement agreement and Plaintiff's proposed

settlement agreement was that he was to receive the full $7,000 and not split the amount with his attorney. (Id.). Two days later, on February 26, 2025, defense counsel responded by incorporating Brooks' changes into the originally proposed settlement agreement with yellow highlighting to reflect Brooks' changes. (Doc. No. 22-4). Plaintiff filed this lawsuit on February 27, 2025, never returning this February 26, 2025, email from Defendants' legal counsel.

On May 12, 2025, Plaintiff filed a document titled "Plaintiff's Combined Opposition to Defendants' Motion to Dismiss and Motion to Strike Fourth, Fifth, Sixth, and Seventh Affirmative Defenses." (Doc. No. 13). Enclosed therein was the above-referenced "clincher" and settlement agreement releasing any and all claims against Defendants. (Doc. Nos. 13-5 & 13.6). Noting that the Agreement was unsigned and that there was no time limitation for payment and execution, Defendants executed the original settlement agreement and sent it and $100.00 to Plaintiff, which he verified he received through a sworn declaration. (Doc. No. 17-1). Plaintiff has since filed Rule 11 sanctions against Defendants for these actions and demanded Defendants pay him $1,000,000. (Doc. No. 17-1).

A. **Defendants' Motion to Enforce Settlement Agreement**

The Court first addresses Defendants' Motion to Enforce Settlement Agreement. This Court has fully set out the legal standard in considering a motion to enforce a settlement agreement:

> Resolution of a motion to enforce a settlement agreement draws on standard contract principles. District courts have inherent authority, derived from their equity power, to enforce settlement agreements. Exercising this authority has the practical effect of entering a judgment by consent.
>
> To exercise this inherent power, a district court must (1) find that the parties reached a complete agreement and (2) be able to determine its terms and conditions. If the court finds that both factors have been satisfied by the parties, the court may summarily enforce the agreement as long as the excuse for nonperformance of the agreement is comparatively insubstantial. Having second

3

thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement.

If there is a factual dispute over the existence of an agreement, over the authority of attorneys to enter into the agreement, or over the agreement's terms, the district court may not enforce a settlement agreement summarily, but must instead conduct a plenary evidentiary hearing in order to resolve that dispute and make findings on the issues in dispute. If a district court concludes that no settlement agreement was reached or that agreement was not reached on all material terms, then it must deny enforcement.

Clark v. CitiFinancial Servicing LLC, No. 3:16-cv-140, 2017 WL 5557699, at **1–2 (W.D.N.C. Nov. 17, 2017) (internal citations and quotations removed) (granting motion to enforce settlement agreement).

Settlement agreements are governed by ordinary contract law. McNair v. Goodwin, 262 N.C. 1, 7 (1964). Mutual assent, i.e., a meeting of the minds, is the most essential element of an enforceable contract in North Carolina. Snyder v. Freeman, 300 N.C. 204, 218 (1980). Agreement on the material or essential terms is all that is required to form a contract. 1 North Carolina Contract Law § 2-49.

The Court will grant Defendants' motion to enforce the settlement agreement executed on November 25, 2024.[1] Plaintiff fully and completely settled the claims brought in this action. Plaintiff signed the settlement agreement unambiguously releasing any and all claims against Defendants on November 25, 2024. (Doc. No. 13-6). As noted, the terms of the settlement agreement expressly stated that the settlement included a release of any claims filed under Title VII. See (Id.). This settlement agreement reflected mutual assent and a meeting of the minds to

---

[1] Defendants ask in their motion for this Court to "enforce the settlement agreement by Plaintiff on November 25, 2024, or, in the alternative, the settlement agreement reflected in emails with Plaintiff's attorney and Plaintiff on February 5, 2025, and February 24, 2025." (Doc. No. 21). The Court reiterates that it is granting the motion with respect to the November 25, 2024, settlement agreement, in which Plaintiff received $50,000 in exchange for his agreement that he released the right to bring any Title VII claims against Defendant Asheville Detox, LLC.

settle Plaintiff's workers' compensation claim in exchange for a release of claims, including the claim alleged in this lawsuit. The parties reached a complete agreement, and the terms and conditions are clear. Accord Moore v. Beaufort Cnty., 936 F.2d 159, 162 (4th Cir. 1991) (setting out these two factors). This action is therefore dismissed based on the settlement agreement executed on November 25, 2024.

**B. Plaintiff's Motion for Rule 11 Sanctions**

Next, as to Plaintiff's motion for Rule 11 sanctions, Plaintiff complains that Defendants took the settlement agreement he filed (Doc. No. 25-1), signed it, and returned it to Plaintiff with the $100.00 settlement check. Plaintiff asserts that Defendants did this "outside judicial supervision" and "without obtaining Court approval." (Id.). Additionally, Plaintiff complains that Defendants "weaponized Rule 11 correspondence" by filing a safe harbor notice in response to Plaintiff's Motion to Strike. (Id.). These actions, according to Plaintiff, "constitute[d] improper litigation conduct and directly led to the filing of this motion." (Id.). Plaintiff further claims that Defendants' Fourth Affirmative Defense of release "lacks any evidentiary support," thus warranting sanctions. (Id.).

Federal Rule 11 prohibits the filing of a "pleading, written motion, or other paper" for improper purposes, that is lacking in fact or law, or that contains denials warranted on the evidence. FED. R. CIV. P. 11(b). The Rule also states, "[i]f warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." FED. R. CIV. P. 11(c)(2). "Rule 11 motions should not be prepared or threatened for insignificant violations of the rule [and a] claim of violation of Rule 11 is a serious charge and can itself form the basis of a Rule 11 sanction." Johnson v. Charlotte-Mecklenburg Sch. Bd. of Educ., No. 3:19-

5

cv-244, 2020 WL 4700716, at *2 (W.D.N.C. Aug. 13, 2020) (internal citations and quotations omitted).

Plaintiff's Rule 11 sanctions motion is baseless. As Defendants note, Plaintiff has at least twice fully settled the claims he brought in this case. (Doc. No. 21). The bulk of Plaintiff's complaints concern actions taken "outside judicial supervision." Rule 11 only applies where there has been an improper filing. As Defendants note, there is nothing improper about taking a filed settlement agreement with no timeline for performance, signing it, and mailing it to Plaintiff with the $100.00 referenced in the settlement agreement. The Court denies Plaintiff's Rule 11 sanctions motion.

C. **Defendants' Request for Attorney Fees**

Defendants request reasonable attorneys' fees incurred in bringing the motion to enforce the settlement and in responding to Plaintiff's Rule 11 sanctions motion. The law has long been that the inherit power of a court includes the assessment of attorneys' fees "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 45–46 (1991). The Court will, in its discretion, deny Defendants' request for attorneys' fees. However, the Court warns Plaintiff that if he proceeds with filing any future motions or actions that are frivolous, the Court will consider awarding attorney fees to Defendants accrued while defending those actions or motions.

II. **CONCLUSION**

**IT IS, THEREFORE, ORDERED** that Plaintiff's pro se Motion for Rule 11 Sanctions, (Doc. No. 25), is **DENIED**, Defendants' Motion to Enforcement Settlement Agreement, (Doc. No. 21), is **GRANTED,** and this action is dismissed with prejudice. The Court denies Defendants' request for attorneys' fees.

Signed: July 28, 2025

Max O. Cogburn Jr
United States District Judge